IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES R. WASHINGTON,

                Plaintiff,

v.

MELISSA BLOCK, FOFANA, RACHEL SNOW, CHRISTINE HOLMEN, C/O JOHNSON, C/O HOLLINSTEIN, SGT. PATTERSON, JOHN DOE FIRST SHIFT SGT, JANE DOE FIRST SHIFT SGT, LT. FOSSHAGE, CAPT. P. SANNEH, TEACHER SCHMIDT, and WISCONSIN INJURED PATIENTS AND FAMILIES COMPENSATION FUND,

                Defendants.

OPINION and ORDER

23-cv-160-wmc[1]

---

Pro se plaintiff James R. Washington has filed an amended complaint alleging that defendants provided inadequate medical care for a severe allergic reaction that caused his lips to become abnormally swollen and led to his hospitalization for several days. Because Washington is proceeding in forma pauperis, I must screen the amended complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the amended complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Washington's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will allow Washington to proceed on an Eighth Amendment claim for inadequate medical care against defendants Teacher Schmidt, John Doe First Shift Sergeant, Christine Holmen, CO Hollinstein, Sergeant

---

[1] I am exercising jurisdiction over this case solely for screening purposes.

Patterson, P. Sanneh, and Lieutenant Fosshage, and on a Wisconsin-law medical negligence claim against the same defendants and defendant Wisconsin Injured Patients and Families Compensation Fund (Fund). I will dismiss Washington's other claims and remove the other defendants from the case.

ALLEGATIONS OF FACT

Washington was incarcerated at Columbia Correctional Institution (CCI) at the times relevant to his amended complaint. On October 4, 2021, Washington's lips became abnormally swollen. Defendant Schmidt, the observation monitor, initially ignored Washington's complaint about his lips, but eventually gave him ice. Schmidt ignored Washington's request to be seen by a nurse. Defendant Doe, a correctional sergeant, did not check on Washington or request medical help even though someone told Doe about Washington's condition.[2]

Later, defendant Johnson, a correctional officer, and defendant Holmen, a nurse, went to Washington's cell. Holmen noted that Washington's lips were "grossly swollen" and gave him Benadryl. Washington contends that Holmen's assessment was inadequate, partly because she did not ask what medications he was taking to see if Benadryl was contraindicated. Holmen did not notify medical personnel of Washington's condition even though she knew that no nurse would be at the prison overnight. Washington contends that Holmen could have contacted an on-call doctor or nurse.

---

[2] I will remove defendant Jane Doe First Shift Sergeant from the case because this defendant duplicates defendant John Doe.

Washington repeatedly told defendant Hollinstein, a correctional officer, that the Benadryl was ineffective and that he was having a medical emergency, but she ignored him at first. Eventually, Hollinstein notified defendant Patterson, a correctional sergeant.

Patterson went to Washington's cell in the early morning hours of October 5, 2021, at least three hours after Patterson learned about Washington's condition. Washington, who by that time was unrecognizable, told Patterson that he was having trouble breathing and needed immediate medical help. Patterson notified defendants Sanneh and Fosshage, supervisory correctional officials, of Washington's condition. Sanneh and Fosshage told Patterson that Washington would have to wait until 5:00 a.m. to receive a medical evaluation because no nurse would be on duty until then. Sanneh and Fosshage did not see Washington in person, contact an on-call doctor or nurse, transport him to a hospital, or notify the next shift supervisors of his condition.

Later that morning, Washington was rushed to the hospital, where doctors put him in a medically induced coma and on life support. It was later determined that Washington's blood pressure medication caused him to have a severe allergic reaction.

ANALYSIS

A. Inadequate medical care

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment for inadequate medical care, Washington must allege that he had an objectively serious medical condition and that defendants consciously disregarded that condition. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). An objectively serious medical

3

need is one that has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Id.* Washington has pleaded a serious medical need because he alleges that he had severe allergic reaction that caused him to be hospitalized for several days.

Washington must also allege that defendants "actually knew of, but disregarded, a substantial risk to the [his] health." *Id.* Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Medical personnel provide inadequate medical care by choosing "easier and less efficacious treatment" that they know is ineffective. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *see also Pyles*, 771 F.3d at 409 ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was blatantly inappropriate."). A significant delay in effective medical treatment may also support a claim of inadequate medical care, especially where the result is prolonged and unnecessary pain. *Berry*, 604 F.3d at 441. A correctional officer consciously disregards a prisoner's medical needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

I will allow Washington to proceed on this claim against Schmidt, who Washington alleges initially ignored his complaint about his lips and request to see a nurse. Schmidt eventually gave Washington ice but, considering the alleged obviousness of Washington's

4

condition, it's fair to infer that: (1) Schmidt should have made greater efforts to contact medical staff; and (2) the delay in Washington's treatment worsened his medical emergency.

I will allow Washington to proceed on this claim against Doe based on his allegation that Doe failed to check on him or request medical help when Doe learned about Washington's condition.

I will allow Washington to proceed on this claim against Holmen. Although Holmen gave Washington Benadryl, Washington contends that she did this because it was easier than fully evaluating him. It's also fair to infer that, considering the alleged seriousness of Washington's condition, Holmen should have contacted an on-call doctor or nurse to ensure that he received medical care overnight.

I will not allow Washington to proceed on this claim against Johnson. Washington faults Johnson for not contacting a superior or recommending that Washington be hospitalized. But Johnson went to Washington's cell with Holmen and could defer to her medical judgment because he is a correctional officer. *See McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022). The mere allegation that Washington's lips were abnormally swollen does not show that Johnson had reason to know that Holmen's care was inadequate. *See id.* at 575 ("[R]ecognizing that someone is sick is not the same as knowing that he is receiving inadequate care from a trained medical professional.").

I will allow Washington to proceed on this claim against Hollinstein based on his allegation that Hollinstein initially ignored his complaints that Benadryl was ineffective and that he was having a medical emergency. Although Hollinstein eventually notified Patterson, it's fair to infer that this delay was unnecessary and worsened his medical emergency. Similarly,

5

I will allow Washington to proceed on this claim against Patterson based on his allegation that Patterson waited for at least three hours before checking on Washington.

I will allow Washington to proceed on this claim against Sanneh and Fosshage based on the allegation that they said that Washington would have to wait until 5:00 a.m. to receive a medical evaluation because a nurse would not be on duty until then. Because Sanneh and Fosshage allegedly knew that Washington was unrecognizable and having trouble breathing, it's fair to infer that they should have sought medical help or at least gone to see him.

Washington alleges that defendants Snow, Fofana, and Block were responsible for ensuring that a nurse was available on third shift, but his allegation is conclusory. Washington acknowledges that CCI's policy was to have health care staff available around the clock, and Washington does not explain what these defendants did, or failed to do, that caused the absence of a third-shift nurse on that night. Furthermore, Washington alleges that CCI staff could have contacted an on-call doctor or nurse, which undermines the suggestion that no medical staff was available to help him. Washington's other allegations against these defendants are similarly conclusory. In short, Washington's conclusory allegations do not suggest that that Snow, Fofana, and Block participated in, or otherwise caused, the inadequate medical care. *See Ashcroft v. Iqbal*, 56 U.S. 662, 678 (2009) (conclusory allegations fail to state civil rights claim); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." (alteration adopted)).

Washington alleges that defendant Blount, defendant Beahm, Sanneh, Fosshage, Patterson, Hollinstein, Schmidt, and Johnson failed to make incident reports and failed to

6

preserve body and other camera footage.[3] But these events are separate from the events underlying Washington's inadequate medical care claim, and defendants' mere failure to comply with prison policies does not violate the Constitution. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). I will not allow Washington to proceed on these allegations.

Washington alleges that defendant Leiser interfered with his ability to file prison grievances.[4] But Washington's allegations do not suggest that Leiser's conduct caused him to receive inadequate medical care, and "the failure to follow a state's inmate grievance procedures is not a federal due-process violation." *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). I will not allow Washington to proceed against Leiser.

Washington alleges that Snow improperly denied his grievance, partly because Snow relied on medical records that Fofana falsified. But Washington's explanation for why Snow improperly denied his grievance lacks clarity, and his allegation that Fofana falsified medical records is conclusory. Washington's allegations do not suggest that these defendants could have remedied the inadequate medical care, partly because Washington bases his claim of inadequate medical care on past events. Washington's allegations do not suggest that these defendants' alleged mishandling of his grievance contributed to the inadequate medical care.

---

[3] Beahm and Blount are named as defendants in the amended complaint's caption but were not added to the docket as defendants.

[4] Leiser is named as a defendant in the amended complaint's caption but was not added to the docket as a defendant.

**B. Medical negligence**

Medical negligence is the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis. 2d 124, 149 (1999). Like all negligence claims, a medical negligence claim "requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 2001 WI 42, ¶ 17. "[A]n inmate has a claim against a prison employee who negligently fails to obtain medical attention for the inmate and that failure causes the inmate to sustain a serious illness or injury." *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 375 (Ct. App. 1994).

I will allow Washington to proceed on a medical negligence claim against Schmidt, Doe, Holmen, Hollinstein, Patterson, Sanneh, and Fosshage for the reasons that I have allowed him to proceed against them under the Eighth Amendment. I will allow Washington to proceed on this claim against the Fund because he seeks more than $1 million in damages based on this claim and must sue the Fund to recover amounts in excess of defendants' insurance coverage. *See Mayek v. Gundersen Hosp.-Boscobel, WI*, No. 19-cv-811-jdp, 2021 WL 964867, at *3 (W.D. Wis. Mar. 15, 2021); *Earl v. Kinziger*, No. 20-cv-617, 2020 WL 7643230, at *1 & n.1 (E.D. Wis. Dec. 23, 2020). I discern no other viable theories of negligence, medical or otherwise.

ORDER

IT IS ORDERED that:

1. Plaintiff James R. Washington is GRANTED leave to proceed on an Eighth Amendment inadequate medical care claim against defendants Schmidt, Doe, Holmen, Hollinstein, Patterson, Sanneh, and Fosshage, and on a medical negligence

claim against the same defendants and defendant Wisconsin Injured Patients and Families Compensation Fund.

2. Washington's claims against the other defendants are DISMISSED.

3. Block, Fofana, Snow, Johnson, Jane Doe First Shift Sergeant, Beahm, Leiser, and Blount are to be removed as defendants.

4. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

5. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's amended complaint and this order are being sent today to the Attorney General for service on defendants. Plaintiff should not attempt to serve defendants on his own at this time. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's amended complaint if it accepts service for defendants.

6. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed for failure to prosecute.

7. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

8. The clerk of court is directed to send plaintiff a copy of this order.

Entered August 1, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge